[No. H013246. Sixth Dist. Nov. 29, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY GUZMAN, Defendant and Appellant.

**COUNSEL**

Gerard Engleskirchen, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MIHARA, J.—Defendant pled guilty to several narcotics offenses pursuant to a plea bargain, and a six-year prison term was imposed on May 31, 1988. However, the criminal proceedings were suspended, and he was committed to the California Rehabilitation Center (CRC). At that time, he was given 80 days of credit for actual time served. Defendant was received by the CRC on June 25, 1988. Thus, prior to the commencement of his CRC commitment, defendant had served 105 actual days in county jail. Between June 1988 and June 1994, defendant served a total of 104 actual days in county jail after 4 arrests for violating his CRC parole.[1] In August 1994, the CRC notified the Santa Clara County Superior Court that on June 9, 1994 it had excluded defendant from the CRC after determining that he was "not suitable" for the civil addict program because of "his proneness for violence" evidenced by "his self proclaimed" gang affiliation. The CRC informed the court that "[a]s of 7/18/94," defendant had spent 1057 days in custody during his CRC commitment. Defendant was sent to San Quentin "pending Court action." He was subsequently returned to Santa Clara County for sentencing. On September 28, 1994, the 6-year prison term was "reimposed," and defendant was found to be entitled to 1,242 days of credit for actual custody time and 104 days of custody credit pursuant to Penal Code section 4019 for a total of 1,346 total days of credit.

On appeal, defendant challenges the court's calculation of his custody credit. He claims that (1) he is entitled to "good behavior and participation" credit pursuant to Penal Code section 2931, (2) he is entitled to "worktime" credit pursuant to Penal Code section 2933, and (3) he is entitled to additional Penal Code section 4019 credit for the period between the CRC's decision to exclude him and his sentencing. We conclude that defendant is entitled to 56 additional days of Penal Code section 4019 credit.

ANALYSIS

A few days before this case was submitted, the California Supreme Court decided that persons committed to the CRC are not entitled to "good behavior and participation" credits or "worktime" credits under Penal Code sections 2931 and 2933 for time spent in custody during a CRC commitment. (*People* v. *Jones* (1995) 11 Cal.4th 118 [44 Cal.Rptr.2d 164, 899 P.2d 1358].) The only issue which remains to be resolved herein is whether defendant was deprived of additional Penal Code section 4019 credits due

---

[1]Defendant was held in county jail from October 4, 1989, to November 9, 1989, from May 30, 1991, to June 13, 1991, from November 9, 1992, to November 16, 1992 and from April 6, 1994, to May 20, 1994.

him for the period of time between his exclusion from the CRC and his sentencing hearing.

■ Defendant does not challenge the trial court's calculation of the number of actual days of custody credit due him.[2] His only argument is that the trial court erred in failing to grant him any Penal Code section 4019 credit for the period of time he spent in custody after his exclusion from the CRC and before his sentencing. The Attorney General claims that we should not decide the merits of defendant's claim because (1) defendant has failed to provide an adequate record to support his claim, and (2) defendant waived any entitlement to additional credit by failing to object below.

First, the record provides substantial support for defendant's claim. The record documents that defendant served 105 actual days in county jail custody prior to his initial arrival at the CRC and 104 actual days in county jail custody during 4 stints following arrests for violating his CRC parole prior to his exclusion from the CRC. These periods of county jail custody account for the entire 104 days of Penal Code section 4019 credit which the trial court granted defendant. The record also establishes that defendant was excluded from the CRC on June 9, 1994 and sentenced to state prison on September 28, 1994. This showing was adequate to establish that defendant received no Penal Code section 4019 credit for the period between his exclusion from the CRC and his sentencing. Second, as defendant points out, it would have been ineffective assistance of counsel for his trial attorney to fail to object to the trial court's failure to grant defendant any Penal Code section 4019 credit for the period of time between defendant's exclusion from the CRC and his sentencing if defendant was entitled thereto. No competent counsel could have had any rational tactical basis for declining to object to a trial court's failure to grant custody credit to which his or her client was entitled. For these reasons, we reject the Attorney General's assertion that we may avoid the merits of defendant's claim.

Defendant is entitled to the credit he seeks. Although it is well established that Penal Code section 4019 does not authorize the allowance of conduct credit for time spent at the CRC (*People* v. *Sage* (1980) 26 Cal.3d 498, 502-503 [165 Cal.Rptr. 280, 611 P.2d 874]; *People* v. *Moore* (1991) 226 Cal.App.3d 783, 785 [277 Cal.Rptr. 82]), defendant claims that denying him

---

[2] We are unable to account for 7 of the 1,242 days of actual custody credit granted defendant. He was in custody for 105 days prior to his CRC commitment. The CRC calculated that he was entitled to 1,057 days of credit for the period of his CRC commitment and until July 18, 1994. From July 18, 1994, to September 28, 1994, is 73 days. The total of these figures is 1,235 days. While defendant appears to have received an additional week of actual custody credit, we decline to adjust the trial court's calculation of this figure since no one has challenged it.

conduct credit for time he spent at the CRC *after his exclusion from the CRC* would violate the United States Constitution's guarantee of equal protection. ■ "The equal protection clause of the Fourteenth Amendment to the United States Constitution denies states 'the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute.' (*Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251].)" (*People* v. *Leung* (1992) 5 Cal.App.4th 482, 494 [7 Cal.Rptr.2d 290].) The appropriate standard of review requires, in this case, that a "compelling state interest" justify the distinction between persons spending presentence time in custody at the CRC after being excluded from the CRC and persons spending presentence time in custody in jail. (*People* v. *Sage, supra,* 26 Cal.3d at pp. 506-507.)

■ The purpose of Penal Code section 4019 is to encourage good behavior by incarcerated defendants prior to sentencing. (*People* v. *Moore, supra,* 226 Cal.App.3d 783, 787.) The Legislature's decision to deny Penal Code section 4019 credit to defendants for time spent in nonpenal institutions has been upheld against an equal protection challenge on the ground that "those receiving treatment in [nonpenal institutions] have their own incentives for good behavior . . . ." (226 Cal.App.3d at p. 787.) This rationale does not apply where the person held in the nonpenal institution has already been excluded therefrom and therefore is no longer receiving treatment. A person who has been excluded from the CRC, but remains housed there, has no incentive for good behavior other than the allowance of Penal Code section 4019 credit. Although a person who spends presentence time in custody at the CRC *after being excluded from the CRC* is not being held in a *penal* institution, the state's interest in encouraging such a person's good behavior is identical to its interest in encouraging the good behavior of presentence county jail detainees.

Accordingly, no compelling state interest supports the distinction drawn by Penal Code section 4019 between presentence time spent in custody at the CRC *after exclusion therefrom* and presentence time spent in custody in jail. It follows that the principle of equal protection requires that defendant be allowed custody credit for the period of time he spent in custody between his exclusion from the CRC and his sentencing. Defendant was excluded from the CRC on June 9, 1994. He was sentenced on September 28, 1994. The record supports his claim that he is entitled to 56 days of additional Penal Code section 4019 credit for this period.

CONCLUSION

The judgment is hereby modified to grant defendant an additional 56 days of Penal Code section 4019 credit. The trial court is ordered to prepare an

amended abstract of judgment reflecting this modification and to forward a certified copy of this abstract to the Department of Corrections. In all other respects, the judgment is affirmed.

Elia, J., concurred.

PREMO, Acting P. J.—I respectfully dissent. In my view, the record is inadequate to support defendant's contentions that he was denied Penal Code section 4019 credits or that the calculation of credits denied him equal protection of the law. In addition, I believe that the Attorney General raises a substantial waiver argument which should be discussed.

In the court below, defendant not only failed to object to the computation of time credits, he "appeared to expressly *accede* to it." (*People* v. *Aragon* (1992) 11 Cal.App.4th 749, 766 [14 Cal.Rptr.2d 561].) His attorney stated: "[I]nitially I had incorrectly thought Mr. Guzman was entitled to good time or work time credits, but I have reviewed a copy of the case of the DA provided me which is *People* v. *McEver*.\* It would appear he is not entitled to either good time or work time credits for the time he spent in CRC. [¶] It appears that that time, compilation of credits for time served that I have recently received, appears to be correct."

The Attorney General interprets this passage as a waiver which precludes defendant from raising on appeal the factual issue whether the court correctly awarded credits. "The reason for this rule, of course, is that 'the trial court should be given an opportunity to correct the [mistake] . . . .' [Citations.]" (*People* v. *Green* (1980) 27 Cal.3d 1, 27 [164 Cal.Rptr. 1, 609 P.2d 468].)

Nevertheless, the stated reason for defendant's failure to challenge the credits, the authority of *People* v. *McEver*\* (Cal.App.), was a case in which our Supreme Court granted review six days after defendant's hearing, on October 4, 1994. Because defendant's acquiescence in the computation of custody credits was based on a specific judicial declaration which was invalidated after the hearing by the grant of review, I believe that in this unusual situation defendant did not waive his right to raise the issue on appeal. (Cf. *Marsango* v. *Automobile Club of So. Cal.* (1969) 1 Cal.App.3d 688, 694 [82 Cal.Rptr. 92].) "A contrary holding would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule . . . would be changed on appeal." (*People* v. *Kitchens* (1956) 46 Cal.2d 260, 263 [294 P.2d 17].)

---

\*Reporter's Note: Review granted October 4, 1994 (S040986). Review dismissed November 2, 1995, and cause remanded to Court of Appeal, Fifth Apellate District.

Next, "[t]o preserve . . . a point for review on appeal, a defendant must of course provide an adequate record." (*People* v. *Gordon* (1990) 50 Cal.3d 1223, 1250 [270 Cal.Rptr. 451, 792 P.2d 251].) "It is elementary that an appellate court will not consider assignments of error based upon asserted matters not shown by the record and supported by nothing more than statements in appellant's brief. [Citations.]" (*People* v. *Boyden* (1960) 181 Cal.App.2d 48, 55 [4 Cal.Rptr. 869]; Cal. Rules of Court, rule 13.)

In a chart in his opening brief, defendant uses figures taken from the clerk's transcript that he claims establish that he has been denied section 4019 credits. However, the record is not as clear as his chart makes it appear. His chart conflicts with parts of the record and counts some days in custody twice.

Both defendant's chart and the trial court relied heavily on the probation department's September 28 memo calculating defendant's total time credits.[1] However, the probation department's recital of dates on which defendant was returned to the California Rehabilitation Center (CRC) and the recital of dates in CRC's exclusion letter to the court dated August 3, 1994, do not always agree. For example, CRC says "Mr. Guzman had the following days in the Civil Addict Program: [¶] Received 10/5/89 . . . ." The probation department states defendant was in the county jail at that time: "arrested for parole violation 10/4/89; returned to C.R.C. 11/9/89 . . . ." Defendant's chart concurs with the probation department. Since it makes a difference for computation of section 4019 credits whether defendant spent 36 days in the county jail or 1, clarification of a point such as this is important, but impossible on this record. "Under Penal Code section 4019, subdivision (f), 'a term of six days will be deemed to have been served for every four days time spent in actual custody.' Accordingly, 'conduct credits are to be given for sets of four days' actual time served, with no credit for anything less. A residual set of fewer than four days may not be "rounded up." ' [Citation.] Custody credits are calculated by dividing the number of actual days custody by four and multiplying the result (excluding any remainder) by two. [Citation.]" (*People* v. *Madison* (1993) 17 Cal.App.4th 783, 786-787 [22 Cal.Rptr.2d 157], fn. omitted.)

---

[1]The memorandum states: "*Days in Custody*: [¶] 1242 actual days; 104 days - 4019 PC; 1346 total days; in custody when committed to C.R.C. and arrived there 6/25/88; paroled 3/21/89; returned to C.R.C. for parole violation 6/17/89; paroled 8/16/89; arrested for parole violation 10/4/89; returned to C.R.C. 11/9/89; paroled 8/6/90; arrested for parole violation 5/30/91 and returned to C.R.C. 6/13/91; paroled 4/7/92; arrested for parole violation 11/9/92; released 11/16/92; arrested for parole violation 4/6/94; returned to C.R.C. 5/20/94 and presently in custody (no 4019 PC credits for time in C.R.C.)." The court simply stated: "There is credit for time served as follows: 1242 actual days, plus 104 days pursuant to 4019 of the Penal Code, for a total of 1346 total days that he has already spent in custody. [¶] And the Court will adopt and refer to . . . the memorandum dated September 28th terms of how the probation department arrived at that total of 1346 days."

In addition, defendant's chart counts some days twice. For example, he assigns June 25, 1988, as defendant's last day in the county jail and first day at CRC. The probation report states "in custody when committed to C.R.C. and arrived there 6/25/88 . . . ." CRC's letter states, "Received 6/25/88 . . . ." As defendant calculates it, he was in the county jail 105 days from "03/13/88- 06/25/88" and at CRC for 270 days from "06/25/88- 03/21/89." "Since credit for the date June 2[5] is included in the calculation of time served [in the county jail] from [March 13 to June 25], however, that date should not be counted twice . . . ." (*People* v. *Madison*, *supra*, 17 Cal.App.4th at p. 790.) This could be the reason the majority "are unable to account for seven of the 1,242 days of actual custody credit granted defendant." (Maj. opn., *ante*, p. 694, fn. 2.)

Finally, the record indicates that defendant spent time in custody in San Quentin before being returned to the court for sentencing. However, nothing in the record tells us when defendant arrived at San Quentin and when he left it and whether the 104 days of section 4019 credits the court awarded included some or all of those days in custody in their calculation. I agree with the Attorney General "that it is not at all clear that appellant was denied credit for the time he spent in custody at San Quentin pending further court action."

Even defendant admits, "[i]t is not clear how these numbers were derived." As a court facing a similar situation has stated, "[t]he computation is complicated by the fact different formulas may apply to the time between defendant's arrest and the original imposition of sentence, reversed in November 1986, the time between reversal and new trial, etc. These are not computations this court is inclined to attempt. The trial court with the aid of the Department of Corrections is in a better position to ascertain the presentence credits to which defendant is entitled." (*People* v. *Pitts* (1990) 223 Cal.App.3d 1547, 1560-1561 [273 Cal.Rptr. 389].)

The trial court, with the aid of the probation department and CRC, are in a much better position than we are to correct the alleged error in this case. In my view, on the basis of our record, remand is not only advisable, but required.

Next, defendant claims that he received different treatment from both CRC excludees who are promptly transported after exclusion and from non-CRC detainees awaiting sentencing who are housed in county jails or comparable facilities. Defendant cites to no facts in the record to support either of these statements in this court, and he apparently made no showing in the trial court that there was a delay in bringing him back to Santa Clara

from CRC, that the time waited was unreasonable, or that he was treated differently from any other CRC excludee.

Defendant contends and the majority agrees that "equal protection requires that defendant be allowed custody credit for the period of time he spent in custody between his exclusion from the CRC and his sentencing." (Maj. opn., *ante*, p. 695.) I might well agree that this conclusion is required in a properly presented case, but this is not such a case. The matter should be remanded to the trial court for further proceedings.

Appellant's petition for review by the Supreme Court was denied February 22, 1996. Kennard, J., was of the opinion that the petition should be granted.