5 Cal.Rptr.3d 373 (2003)
112 Cal.App.4th 655
The PEOPLE, Plaintiff and Respondent,
v.
Carlos Ozuna GARZA, Defendant and Appellant.
No. H024041.
Court of Appeal, Sixth District.
October 9, 2003.
Review Granted January 14, 2004.
*377 Alan Siraco, for Appellant (Under appointment by the Court of Appeal) Carlos Ozuna Garza.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Gerald A. Engler, Supervising Deputy Attorney General, David H. Rose, Deputy Attorney General, for Respondents The People of the State of California.
RUSHING, P.J.
The defendant, Carlos Ozuna Garza, was found by police in a Lincoln Town Car that had been missing from his former employer for a week. He was under the influence of phencyclidine (PCP). A jury found the defendant guilty of auto theft, receiving or retaining stolen property (the Lincoln) and being under the influence of a controlled substance. He claims on appeal that these charges were unsupported by substantial evidence, his Marsden[1] motion and motion for new trial were improperly denied, conviction for theft of and retaining the same stolen property was barred by statute, the court improperly instructed the jury on various issues, the cumulative effect of these errors prejudiced his case, and his custody credits were improperly calculated.
We find the trial court properly denied his Marsden motion and motion for new trial, as he failed to produce evidence that defense counsel performed ineffectively or that an irreconcilable breakdown arose in communications between counsel and client. Substantial evidence supported each of the convictions. The jury was properly instructed regarding the legal and factual issues at hand. The improper *378 conviction for both theft and retention of the same property requires the reversal of his conviction for retaining the Lincoln. Error did not cumulatively affect his conviction. We will remand the matter to the trial court for reconsideration of the calculation of custody credits.

Statement Of The Case
An information charged the defendant with auto theft (Veh.Code, § 10851, subd. (a)), receiving or retaining the same stolen vehicle (Pen.Code, § 496),[2] and being under the influence of a controlled substance (Health & Saf.Code, § 11550, subd. (a)). The information also alleged the defendant had served two prior prison terms (§ 667.5, subd. (b)). A jury found the defendant guilty of all charges and, in bifurcated proceedings, the court found true the allegations of priors.
The court denied the defendant's motion for a new trial, which alleged ineffective assistance of trial counsel, and sentenced him to a total prison term of six years.

Statement Of Facts
Police Officer Kelvin Pham found the defendant lying in the driver's seat of a Lincoln Town Car with the engine running. The defendant's behavior showed signs of PCP intoxication: he was unresponsive to questioning, drooled, stumbled, and required assistance to get out of the car. The Lincoln was parked in a strip mall a few blocks from the limousine company that had just reported the auto stolen. The fleet administrator, Judy Walton noticed two cars missing, including this Lincoln, approximately one week before its recovery by Officer Pham. The defendant had worked as a mechanic at the limousine company until approximately three weeks before Officer Pham's discovery of the vehicle.
Walton testified that keys to the autos were kept hanging from a board that was open to company employees, or occasionally were left in the autos themselves. The area housing the keys and autos was not secure, but a stranger would have trouble finding his way into the office where the keys were kept. Walton never saw any customers in this area.

Discussion

I. The Marsden motion was Properly Denied

Facts
Prior to trial, defense counsel sought and obtained a one-month continuance in order to complete her investigation of the case. On the day set for jury selection, the defendant complained to the court regarding his legal representation. The court construed this complaint as a Marsden motion and cleared the courtroom. The defendant explained he had asked counsel to call certain witnesses and she had refused to do so. Specifically, the defendant wanted to present expert evidence regarding the effects of drug use. The court asked trial counsel about her investigation of the case and interaction with the defendant. Counsel explained that she had met with the defendant, investigated his account, found the witnesses requested by the defendant to be unhelpful to his case, and discussed with the defendant why she did not want to present such evidence. Counsel stated she believed the police report and cross-examination of Officer Pham would suffice to address matters related to the defendant's ingestion of PCP. The court explained to the defendant that the prosecution's witness, Officer *379 Pham, could be cross-examined by defense counsel about this subject.
The court then asked the defendant why he had not previously lodged his complaints about counsel. The defendant responded that he did not know how to do so. The trial court ruled that the motion was too late, and regardless of the timing, denied the motion on its merits.

Discussion
Every defendant has the right to the assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) These constitutional rights entitle the defendant not just to "bare assistance" but rather to effective assistance. (People v. Jones (1991) 53 Cal.3d 1115, 1134, 282 Cal.Rptr. 465, 811 P.2d 757; see also Wood v. Georgia (1981) 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220; People v. Bonin (1989) 47 Cal.3d 808, 833, 254 Cal. Rptr. 298, 765 P.2d 460.) "`"When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance."'" (People v. Hart (1999) 20 Cal.4th 546, 603, 85 Cal. Rptr.2d 132, 976 P.2d 683; People v. Barnett (1998) 17 Cal.4th 1044, 1085, 74 Cal. Rptr.2d 121, 954 P.2d 384.)
Defendant concedes he is entitled to replacement counsel only if he has made a substantial showing that the first appointed attorney is not providing adequate representation, or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result. (People v. Hart, supra, 20 Cal.4th at p. 603, 85 Cal.Rptr.2d 132, 976 P.2d 683.) Denial of the motion is proper unless the defendant shows that a failure to replace the appointed attorney substantially impaired his right to assistance of counsel. (People v. Barnett, supra, 17 Cal.4th at p. 1085, 74 Cal.Rptr.2d 121, 954 P.2d 384.) The denial of a Marsden motion is reviewed for abuse of discretion. (People v. Berryman (1993) 6 Cal.4th 1048, 1070, 25 Cal.Rptr.2d 867, 864 P.2d 40, overruled on other grounds by People v. Hill (1998) 17 Cal.4th 800, 822-823, 72 Cal.Rptr.2d 656, 952 P.2d 673.)
Disagreement between a defendant and trial counsel regarding trial tactics does not necessarily show that counsel is performing ineffectively. (People v. Crandell (1988) 46 Cal.3d 833, 859-860, 251 Cal.Rptr. 227, 760 P.2d 423, abrogated on other grounds by People v. Crayton (2002) 28 Cal.4th 346, 364-365, 121 Cal.Rptr.2d 580, 48 P.3d 1136.) Nor does such disagreement require the court to find the defendant's account to be more credible than that of defense counsel. (People v. Smith (1993) 6 Cal.4th 684, 696-697, 25 Cal.Rptr.2d 122, 863 P.2d 192.) Rather, a defendant must produce exculpatory or impeachment evidence showing a likelihood that he would have obtained a more favorable result had such information been presented to a jury. (People v. Bolin (1998) 18 Cal.4th 297, 334, 75 Cal.Rptr.2d 412, 956 P.2d 374.)
Here, the defendant does not elucidate any evidence that would have positively impacted his case had defense counsel called expert or percipient witnesses to explain the effects of PCP on the defendant. He asserts that "[h]ad the jury been presented with evidence that PCP prevented [defendant] from driving, or from having the specific intent to permanently deprive [the limousine company] of the car because he did not really know he was in the car, it is extremely likely this jury would not have been convinced of the truth *380 of [defendant's] guilt beyond a reasonable doubt."
While evidence regarding the effects of PCP was relevant to the defendant's mental state at the time when he was found, its relevance as to his mental state for the period of at least a week in which the Lincoln was missing was negligible. The verdicts show that the jury believed the defendant was responsible for the theft of the Lincoln approximately a week before he was found in the auto. We thus find no potential for prejudice from the lack of expert or percipient witnesses to the defendant's intoxication.

II. The Verdicts were Supported by Substantial Evidence that the Defendant Stole the Lincoln and that his Ingestion of PCP was Willful

Defendant claims there was insufficient evidence to support the convictions, in that the evidence did not show that he took the Lincoln, knew it was stolen when he was found sitting in it, or ingested PCP willfully. We disagree.
On appeal "the court `must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence that is, evidence which is reasonable, credible, and of solid valuesuch that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (People v. Cuevas (1995) 12 Cal.4th 252, 260-261, 48 Cal. Rptr.2d 135, 906 P.2d 1290, quoting People v. Johnson (1980) 26 Cal.3d 557, 578, 162 Cal.Rptr. 431, 606 P.2d 738; People v. Kipp (2001) 26 Cal.4th 1100, 1128, 113 Cal.Rptr .2d 27, 33 P.3d 450.) We presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. (People v. Johnson, supra, 26 Cal.3d at p. 576, 162 Cal. Rptr. 431, 606 P.2d 738.) Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. (In re James D. (1981) 116 Cal. App.3d 810, 813, 172 Cal.Rptr. 321.) The conviction will be overturned only if no rational trier of fact could find the defendant guilty beyond a reasonable doubt. (People v. Ochoa (1993) 6 Cal.4th 1199, 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103, citing People v. Jones (1990) 51 Cal.3d 294, 314, 270 Cal.Rptr. 611, 792 P.2d 643.)
Here, substantial evidence supported the verdict that the defendant stole the Lincoln. He had worked for the limousine company that owned the automobile and so knew where to find its keys. The fleet supervisor testified that keys were sometimes left unattended. Keys and automobiles were potentially accessible 24 hours a day. Defendant was found in the Lincoln a week after it was discovered missing, a few weeks after his employment was terminated. The keys were in the ignition and nobody else was in the automobile. The jury's verdicts were thus supported by the evidence.
There was also substantial evidence that the defendant willfully consumed PCP. Officer Pham discussed in detail his training in recognizing the effects of PCP use and the defendant's symptoms of PCP intoxication when he was arrested. A nurse testified that she drew the defendant's blood when he was arrested. A criminalist testified that scientific testing showed this blood contained PCP. Officer Pham testified regarding the defendant's unresponsiveness to initial questions, slurred speech, drooling, and stumbling. These symptoms indicate the defendant should have been aware that either he was under the influence of a powerful drug or was seriously ill. He did not, however, express any concern for his health to the arresting officers. From *381 these facts, it was reasonable for the jury to conclude that the defendant's ingestion of PCP was willful.

III. The Defendant's Conviction for Both Taking and Receiving Stolen Property Requires Reversal

The defendant claims his convictions for both theft and retention of the same stolen property violated the section 496[3] bar on such dual punishment. The People argue that because the retaining of the Lincoln was completely divorced from its theft by the passage of time, such dual conviction was permissible. We agree with the defendant.
At common law, one could not be dually convicted for both the theft and receipt of the same stolen property. (People v. Price (1991) 1 Cal.4th 324, 464, 3 Cal.Rptr.2d 106, 821 P.2d 610; People v. Jaramillo (1976) 16 Cal.3d 752, 759, 129 Cal.Rptr. 306, 548 P.2d 706; People v. Bausell (1936) 18 Cal.App.2d 15, 18, 62 P.2d 774.) Over time, the common law bar on dual conviction expanded to prohibit dual conviction for a variety of offenses in which one who has stolen property is likely to partake; such as sale, concealment and withholding of the property. (People v. Allen (1999) 21 Cal.4th 846, 858, 89 Cal.Rptr.2d 279, 984 P.2d 486.) Prior to 1992, there existed two exceptions to the bar on dual conviction. (People v. Price, supra, 1 Cal.4th at p. 464, 3 Cal.Rptr.2d 106, 821 P.2d 610.) According to one of these exceptions, dual conviction was proper where the evidence showed the theft was completely divorced from a subsequent receipt, with the typical example describing a thief who disposed of the property and subsequently receives it back in a separate transaction. (People v. Allen, supra, 21 Cal.4th at p. 858, 89 Cal. Rptr.2d 279, 984 P.2d 486; People v. Jaramillo, supra, 16 Cal.3d at pp. 758-759, 129 Cal.Rptr. 306, 548 P.2d 706, both citing People v. Tatum (1962) 209 Cal.App.2d 179,183, 25 Cal.Rptr. 832.)
In 1992, the section governing receipt of stolen property was amended to codify the principle that "no person may be convicted [of buying, receiving, withholding, concealing stolen property] and of the theft of the same property." (§ 496, subd. (a).) This amendment led to the question of whether or when the "`complete divorcement'" of a withholding of property by the thief could still properly lead to dual punishment, as such a result would facially violate section 496 and the common law bar on dual punishment of theft and receipt of the same property. (People v. Hinks (1997) 58 Cal. App.4th 1157, 1162, 68 Cal.Rptr.2d 440; People v. Tatum, supra, 209 Cal.App.2d at p. 183, 25 Cal.Rptr. 832; People v. Jaramillo, supra, 16 Cal.3d at p. 758, 129 Cal. Rptr. 306, 548 P.2d 706.)
To resolve this confusion, the California Supreme Court examined the case law and legislative history regarding dual punishment for theft and retention of stolen property, and ruled that the 1992 amendment of section 496 abrogated the "`complete divorcement'" exception to the bar on dual punishment. (People v. Allen, supra, 21 Cal.4th at pp. 857-858, 89 Cal. Rptr.2d 279, 984 P.2d 486, citing People v. Hinks, supra, 58 Cal.App.4th at p. 1165, 68 *382 Cal.Rptr.2d 440.) In reaching this conclusion, the Supreme Court found that one of the key purposes of the 1992 amendment was to allow punishment of a thief who has retained possession of a stolen object beyond the expiration of the statute of limitation for the original theft (Stats.1992, ch. 1146, § 2, p. 5375)[4] and not to create a back-door method to achieve dual conviction. Even after the 1992 amendment to section 496, however, some published and unpublished cases have come to the conclusion that the "complete divorcement" theory continues to permit a defendant to be convicted of both theft and withholding of the same property, with the divorcement provided by the mere passage of time. (E.g., People v. Strong (1994) 30 Cal. App.4th 366, 373, 35 Cal.Rptr.2d 494.)
We hold, however, that the application of the divorcement exception where the alleged divorcement arises solely from the passage of time violates the clear language, legislative intent, and case law regarding section 496 and its common law roots.[5] Even the court that originated the concept of "complete divorcement" observed that theft necessarily requires that the thief maintain possession of the stolen property for a period of time. (People v. Tatum, supra, 209 Cal.App.2d at p. 183, 25 Cal.Rptr. 832.) "To conceal and withhold is the thief's purpose from the very moment that he gains possession of the property. It is part and parcel of the theft." (Ibid.) Various statutes also recognize that theft necessarily contemplates the withholding of the property from the owner. (E.g., Veh.Code, § 10851 [statute requires intent to permanently or temporarily deprive rightful owner of vehicle]; § 484 [fraudulent representations are "treated as continuing, so as to cover any (property later) received as a result thereof, and the complaint ... may charge that the crime was committed on any date during" such fraudulent representations].) Thus, the core principle behind the bar on dual punishment is that "`if a person is actually a thief he cannot possibly be guilty of receiving the very property which he himself stole.'" (People v. Allen, supra, 21 Cal.4th at p. 854, fn. 4, 89 Cal.Rptr .2d 279, 984 P.2d 486, citing People v. Stewart (1986) 185 Cal.App.3d 197, 204, 229 Cal. Rptr. 445, abrogated on other grounds by People v. Carr (1998) 66 Cal.App.4th 109, 113-114, 77 Cal.Rptr .2d 639.)
Cases analyzing the development of the divorcement exception do not enumerate the passage of time as a potential cause of such divorcement. Echoing People v. Tatum, People v. Jaramillo and subsequent California Supreme Court cases offered a hypothetical in which the thief disposes of, then again receives the same stolen property, as an example of complete divorcement. (See People v. Jaramillo, supra, 16 Cal.3d at p. 759, fn. 8, 129 Cal.Rptr. 306, 548 P.2d 706; People v. Allen, supra, 21 Cal.4th at pp. 860-861, 89 Cal.Rptr .2d 279, 984 P.2d 486, citing People v. Reyes (1997) 52 Cal.App.4th 975, 987, 61 Cal.Rptr.2d 39.) Even the choice of the term, divorcement, implies that a separation must arise between the thief and his booty before the exception becomes applicable. (Webster's 3d New Internat. Diet. (1993) Divorce, p. *383 664.) Thus, the developers of the divorcement exception did not contemplate that the passage of time would create such divorcement.
Further, our interpretation is consistent with the language of section 496. (People v. Hinks, supra, 58 Cal.App.4th at p. 1164, 68 Cal.Rptr.2d 440 ["significance should be given to every word of a statute, if possible, and an interpretation which renders part of the statute surplusage or nugatory should be avoided"]; see also People v. Allen, supra, 21 Cal.4th at p. 859, 89 Cal.Rptr.2d 279, 984 P.2d 486; Home Depot, U.S.A., Inc. v. Contractors' State License Bd. (1996) 41 Cal.App.4th 1592, 1600-1602, 49 Cal.Rptr.2d 302, modified by statute on other grounds as stated in Denver D. Darling, Inc., v. Controlled Environments Const, Inc. (2001) 89 Cal. App.4th 1221, 1231, fn. 4, 108 Cal.Rptr.2d 213.) Were we to accept the People's position and that adopted by People v. Strong, supra, 30 Cal.App.4th 366, 35 Cal.Rptr.2d 494, the portion of section 496 that reads, "no person may be convicted both pursuant to this section and of the theft of the same property" would not apply to a significant portion of the specific actions made criminal by the statute; namely, withholding, concealing or aiding the withholding or concealing of stolen property. Contrary to the implication of Strong, the statute does not distinguish between brief withholding, continued withholding, withholding for a long time, or withholding beyond the statute of limitations for the original theft. The statute simply bars conviction for both theft and concealing of the stolen property. (People v. Hinks, supra, 58 Cal.App.4th at p. 1165, 68 Cal.Rptr.2d 440.) Our holding that the passage of time may not form the basis to find divorcement thus supports the plain meaning of section 496 and is consistent with the common law development of the bar on dual punishment.
Even if the "complete divorcement" theory of dual conviction still existed, the facts of this case show no basis to conclude the verdict for receiving stolen property was based upon this theory. The prosecutor did not argue that the receipt of the Lincoln was divorced from its theft. Nor did the prosecutor argue that the initial taking of the Lincoln was merely a joyride, and was not effected with the intent to permanently deprive the company of its property. (See People v. Jaramillo, supra, 16 Cal.3d at pp. 757, 759, 129 Cal. Rptr. 306, 548 P.2d 706 [defendant may properly be convicted both of Veh.Code, § 10851 and Pen.Code, § 496 if the initial taking was merely a joyride without the intent to permanently deprive the owner of possession and was thus not a theft crime; dual conviction, however, requires specific findings that the taking was not a theft].)
The jury was not required to complete a special verdict form stating what facts formed the bases for the car theft and receiving stolen property counts. (See People v. Jaramillo, supra, 16 Cal.3d at pp. 757, 759, 129 Cal.Rptr. 306, 548 P.2d 706.) The jury was not instructed that conviction pursuant to section 496 required any showing of divorcement. The verdict form explained that section 496 criminalizes only buying or receiving stolen property, and did not distinguish between divorced or nondivorced withholding. Nor was the jury instructed pursuant to CALJIC No. 17.02 that these counts alleged separate offenses, or pursuant to CALJIC No. 17.03 that dual conviction for car theft and receipt of stolen property was barred. The fact that the jury was instructed that repetition of legal theories was not meant to denote any focus up on them strengthens the concern that what occurred was forbidden dual conviction. *384 The inference that the defendant was improperly dually convicted has therefore not been rebutted. (See People v. Jaramillo, supra, 16 Cal.3d at p. 759, 129 Cal.Rptr. 306, 548 P.2d 706 [reversal is necessary where inference of dual conviction was not rebutted].) We must reverse the convictions. If the People do not timely elect to retry the defendant on a theory permitting dual conviction, the trial court should reinstate only the conviction of violating Vehicle Code, section 10851. (People v. Allen, supra, 21 Cal.4th at p. 852, 89 Cal.Rptr.2d 279, 984 P.2d 486, citing People v. Jaramillo, supra, 16 Cal.3d at p. 760, 129 Cal. Rptr. 306, 548 P.2d 706 and People v. Briggs (1971) 19 Cal.App.3d 1034, 1037, 97 Cal.Rptr. 372 [both applying this procedure where defendant was convicted both of Veh.Code, § 10851 and Pen.Code, § 496].)

IV. The Jury was Properly Instructed on the Elements of Being Under the Influence

The defendant claims CALJIC No. 16.060 erroneously lowered the prosecution's burden of proving his consumption of PCP was willful. This occurred, he argues, because while the bulk of CALJIC No. 16.060 explains that such consumption must be willful, one section allows the defendant to be found guilty if the jury finds he "was under the influence of a controlled substance...." While this section taken on its own could be misleading, the instructions on the whole made clear that only willful consumption of a controlled substance was penalized.
Other instructions, outside of CALJIC No. 16.060 explained that consumption of PCP was a general intent crime, requiring the intent to commit the forbidden act. The jury was further told to regard each instruction in light of the others. In this way, the absence of the willfulness element in one portion of the instruction was remedied by other instructions. (People v. Musselwhite (1998) 17 Cal.4th 1216, 1248, 74 Cal.Rptr.2d 212, 954 P.2d 475.) The instructions issued to the jury were thus not infirm in the manner suggested by the defendant.

V. The Court's Refusal to Instruct Regarding the Defense of Voluntary Intoxication was Proper

The defendant claims the trial court erred by refusing to instruct the jury that his voluntary intoxication could serve as a defense to the theft of the Lincoln.[6] He argues this error violated his constitutional rights to trial by jury and to present a defense.
A defendant is entitled to instruction on the relevance of intoxication to the formation of the specific intent to commit a crime only if he has presented substantial evidence that he was intoxicated and that the intoxication actually impacted the formation of intent to commit the crime. (People v. Williams (1997) 16 Cal.4th 635, 677, 66 Cal.Rptr.2d 573, 941 P.2d 752.) The evidence that he was under the influence of PCP only related to the time at which he was found. The Lincoln had disappeared at least a week before the defendant was found lying intoxicated therein. The defendant presented no evidence of his mental state at the time the Lincoln was actually stolen. (See People v. Horton (1995) 11 Cal.4th 1068, 1119, 47 Cal.Rptr.2d 516, 906 P.2d 478.) Evidence that a defendant was intoxicated at one point in time alone does not constitute *385 substantial evidence that he was intoxicated at any other point in time. (Ibid., People v. Williams, supra, 16 Cal.4th at pp. 677-678, 66 Cal.Rptr.2d 573, 941 P.2d 752.) The trial court's refusal to so instruct the jury was thus proper. (People v. Horton, supra, 11 Cal.4th at p. 1119, 47 Cal.Rptr.2d 516, 906 P.2d 478; People v. Williams, supra, 16 Cal.4th at pp. 677-678, 66 Cal.Rptr.2d 573, 941 P.2d 752.)

VI. The Court's Comments on the Evidence were Proper

The defendant claims the trial court expressed bias against his case by providing an inaccurate instruction and commenting on circumstantial evidence that appellant stole the Lincoln. He argues these comments denied his rights to trial by jury, fair trial and due process, requiring reversal of all counts.

Facts
During deliberation, the jury sent two questions to the court. One asked, "[d]oes the definition of `drive' include sitting in the driver's seat with the motor running but not moving?" The other asked, "[i]f defendant was in the car but not driving, knowing that it was stolen, someone else was driving, does that constitute `taking'?"
The trial court advised counsel of his proposed response to the jury, which included examples of circumstantial evidence showing that one had driven a car, and observations that the prosecution's case was based upon such circumstantial evidence. Defense counsel objected to the court's giving any explanation beyond specific definitions of "taking" and "driving," and reference to relevant jury instructions. She also opined that it was improper for the court to discuss the facts of the case. The court responded to defense objections by stating that the California Constitution permitted it to comment on the evidence so long as it was made clear that the jury may accept or reject such comment. Counsel conceded that the court could observe that there was no evidence presented that anybody else had driven the car. When the court stated that it would proceed according to its original plan, defense counsel stated, "[t]hat's fine, Your Honor."
The court instructed the jury, "Part of what I'm going to tell you is a comment on the evidence. The State Constitution permits a trial judge to comment on the evidence. My comments, however, may be accepted or rejected by you. You are not bound at all by what I say concerning any evidence. [¶] To answer the first question: `Taking' means to get into one's possession or to transfer into one's keeping or control. There is no evidence in this case of someone else being in the car. [¶] With reference to `driving,' driving is any volitional movement of the vehicle. There is a case from the appellate court on which the facts were as follows: [¶] A California Highway Patrolman found a vehicle in a ditch along the road with a person at the wheel passed out from intoxication. No one saw any driving. No one else was in the vehicle. The person at the wheel was still convicted of driving under the influence. That was an application of common sense. [¶] You are reminded in examination as prospective jurors that you were to use your common sense. Common sense is not in the instructions. That is something that you supply. [¶] Now with respect to the application of common sense, you may make reasonable inferences. And you are reminded of the instructions on pages 3 and 4 concerning circumstantial evidence. [¶] As an example of reasonable inference, there is a little scenario that I can give you. A wife hears the garage door closing. She goes out on the porch. She sees her husband in the car that she had put away the night before. The motor is running, *386 sitting in the driveway. [¶] She can make a reasonable inference that the husband took the car in the garage, drove it out, and had it standing there when she was looking at it. Reasonable inference. [¶] In this case you have heard evidence of the location of the [limousine company] lot. You have heard evidence as to where the defendant lives. You have heard evidence as to the defendant's location at the time of his arrest. And it's up to you to make reasonable inferences from all the facts that have been shown by the evidence."
The court denied defense counsel's request to rebut to the jury the court's comments. The jury returned a verdict shortly thereafter.

Discussion
"The [trial] court may make any comment on the evidence and the testimony ... as in its opinion is necessary for the proper determination of the cause." (Cal. Const., art. VI, § 10; § 1127.) It also "shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them...." (§ 1127.) These provisions were designed to allow the court "to utilize its experience and training in analyzing evidence to assist the jury in reaching a just verdict. [Citations.]" (People v. Cook (1983) 33 Cal.3d 400, 407, 189 Cal.Rptr. 159, 658 P.2d 86, overruled in part on other grounds by People v. Rodriguez (1986) 42 Cal.3d 730, 765-767; People v. Proctor (1992) 4 Cal.4th 499, 542, 15 Cal.Rptr.2d 340, 842 P.2d 1100.)
When a court finds it necessary to comment on trial evidence to a jury, the comment must be accurate and not argumentative. (People v. Proctor, supra, 4 Cal.4th at p. 542, 15 Cal.Rptr.2d 340, 842 P.2d 1100; People v. Gates (1987) 43 Cal.3d 1168, 1207, 240 Cal.Rptr. 666, 743 P.2d 301; People v. Rodriguez, supra, 42 Cal.3d at p. 766, 230 Cal.Rptr. 667, 726 P.2d 113.) Thus, the trial court may not withdraw material evidence from the jury's consideration, distort the record, impliedly direct a verdict, or in any other way disturb the jury's factfinding power. (Ibid.)
Here, the jury's questions indicated there was confusion about the analysis of circumstantial evidence that defendant had access to the Lincoln's keys and was found in the Lincoln a week after it was reported missing. This confusion triggered the court's duty to clarify the applicability of the law to the evidence at hand. Importantly, the court first stated that its observations regarding the facts of the case were subservient to the jury's interpretation of such evidence. This instruction lessened any tendency of the subsequent examples to lead the jury to believe a certain finding was required.
The court then redirected the jury towards the standard instructions on analysis of circumstantial evidence. Standard jury instructions concerning circumstantial evidence do not undermine the prosecution's burden of proving guilt beyond a reasonable doubt, particularly in light of other instructions correctly stating the prosecution's burden. (People v. Kipp (1998) 18 Cal.4th 349, 375, 75 Cal.Rptr.2d 716, 956 P.2d 1169.) These instructions properly direct the jury to accept an interpretation of the evidence favorable to the prosecution and unfavorable to the defense only if no other "`reasonable'" interpretation can be drawn. (Ibid.)
Notably, the court's instruction foreclosed several potential erroneous bases for conviction. The jury's questions indicated they considered that the defendant's passive activities of sitting in the car or being a passenger therein may have formed the basis for conviction. The court's instruction that taking and driving required substantial *387 volitional and possessory actions by the defendant clearly excluded these conclusions. Further, the court's examples of circumstantial evidence were evenly divided between noncriminal and culpable activities. While one of the examples considered evidence that a person had driven a car into a ditch while intoxicated, the other considered the innocent act of a husband moving the wife's car. The court's explanation of both culpable and non-culpable examples of circumstantial evidence of driving indicated to the jury that even if it believed the defendant drove the Lincoln, such driving was still innocent if it was not accompanied by other necessary factors.
The court finally noted the proximity of the limousine company to the location where the defendant was found, and that there was no evidence that anyone else had driven the Lincoln. This statement brought to the jury's attention the circumstantial evidence to which the instructions applied. We find that the court's cautionary instructions and the overall balance of the court's statements overcame any likelihood they improperly swayed the jury. The comments did not withdraw evidence from the jury's consideration, distort the evidence, direct or argue towards a verdict of guilt. (See People v. Proctor, supra, 4 Cal.4th at p. 542, 15 Cal.Rptr.2d 340, 842 P.2d 1100; People v. Rodriguez, supra, 42 Cal.3d at p. 766, 230 Cal.Rptr. 667, 726 P.2d 113; People v. Gates, supra, 43 Cal.3d at p. 1207, 240 Cal.Rptr. 666, 743 P.2d 301.) The court's comments on the evidence were thus proper.

VII. The Motion for New Trial was Properly Denied

The defendant claims the trial court erroneously denied his motion for a new trial. This motion was based upon the alleged ineffectiveness of trial counsel. The trial court appointed independent counsel to prepare this motion. In the motion, defendant alleged that trial counsel did not visit him in jail often enough, did not discuss a defense strategy with him, and would not discuss certain matters with him. For example, trial counsel refused to investigate why the defendant's jacket was omitted from the police's evidence list, and why the prosecution referred to the defendant's old address during argument. Independent counsel opined that trial counsel failed to investigate several potential sources of exculpatory evidence, including the jacket and individuals who witnessed the defendant lying in the Lincoln before he was found. Referring only to its denial of the defendant's previous Marsden motion on the merits, the trial court denied the current motion.
A defendant may move to be granted a new trial where error of the trial court or misconduct of counsel deprived him of a fair trial. (§ 1181; People v. Fosselman (1983) 33 Cal.3d 572, 582-583, 189 Cal.Rptr. 855, 659 P.2d 1144.) In order to prevail on a motion for a new trial alleging ineffective assistance of counsel, the defendant must show that counsel's deficient performance withdrew a potentially meritorious defense or otherwise prejudiced his case to the extent that the result of the verdict is unreliable. (People v. Earp (1999) 20 Cal.4th 826, 870, 85 Cal.Rptr.2d 857, 978 P.2d 15; People v. Fosselman, supra, 33 Cal.3d at pp. 583-584, 189 Cal. Rptr. 855, 659 P.2d 1144.) The denial of a motion for a new trial will only be reversed in the case of "`"`manifest and unmistakable abuse of discretion.'"' [Citation.]" (People v. Earp, supra, 20 Cal.4th at p. 890, 85 Cal.Rptr.2d 857, 978 P.2d 15.)
The trial court has the power to evaluate the credibility of evidence in support of a motion for a new trial. (People v. Richard (1951) 101 Cal.App.2d 631, 635, *388 225 P.2d 938.) Here, the defendant's affidavit consists largely of his subjective evaluation of defense counsel's reaction to his views on the case, many of which actually were addressed at trial. For example, he wrote, "her approach to the meeting[7] was that I should have taken the offer, and the entire meeting was negative"; "when I tried to bring [the jacket] up to counsel, it was completely ignored"; "counsel never really was willing to listen to me regarding my defenses"; "my attempts to provide [information that cars frequently were missing from the limousine company for periods and later found] seemed to fall on deaf ears; ..." In fact, the limousine company's fleet administrator did testify that she discovered that cars were missing on a regular basis, and that the keys were available to many employees.
In his affidavit, independent counsel stated that defense counsel had performed some investigation, but pointed to a few areas that he believed should have been investigated further. Specifically, he pointed to her failure to investigate what happened to the defendant's jacket that was found in the Lincoln with him, failure to interview other witnesses to the defendant's lying in the Lincoln, and a general lack of "meaningful attorney-client relationship prior to or during trial."
The defendant here fails to elucidate how investigation of these subjects could have led to a more favorable result for the defendant. As discussed above, the court made inquiry into the defendant's pretrial Marsden motion and found acceptable defense counsel's explanation that she had in fact interviewed witnesses suggested by the defendant and found them to be unhelpful to his case. Further, many of the issues the defendant wished to pursue were in fact presented to the jury. The defendant admits defense counsel did cross-examine Officer Pham regarding the care with which the investigation was undertaken by asking him how officers had lost the defendant's jacket. Independent counsel asserts that defense counsel should have tracked down the person who called the police to obtain the identities of individuals who were allegedly seen taking things from the Lincoln at the time of the call to police. He did not, however, explain whether there was any indication in the police records how defense counsel could find these people, or how they would exonerate the defendant. Officer Pham testified that nobody else was in or near the auto when he arrived at the scene. The involvement of coperpetrators in the theft or receipt of the Lincoln would not erase the fact that the defendant was found in possession of a car to which he had access, but that he did not have permission to take. In this light, we find the trial court's implicit judgment in favor of defense counsel's credibility to have been reasonable, as it appears counsel did in fact listen to the defendant, investigate his account, and present what helpful evidence there was to the jury.

VIII. Cumulative Prejudice

The lack of an accumulation of error necessarily leads to the conclusion that no prejudice arose therefrom.

IX. The Recalculation of Custody Credits is Remanded to the Trial Court

The defendant claims his custody credits were improperly calculated. Specifically, he claims the trial court erred by not considering eight days he spent in custody on the instant charges before he *389 began a sentence for an unrelated misdemeanor. The defendant has written to the trial court regarding this dispute and received no response. The People argue that the record does not support the contention that the defendant would have been free from custody in this intervening eight-day period.
Any days spent in custody shall be credited to a defendant's term of imprisonment. (§ 2900.5.) It is the duty of the trial court to calculate custody credits rather than relegating this ministerial matter to the Court of Appeal, as the trial court is in a better position to make the relevant factual findings. (People v. Fares (1993) 16 Cal.App.4th 954, 957-958, 20 Cal. Rptr.2d 314.) The record does not show that the defendant waived his right to custody credits. (See People v. Guzman (1995) 40 Cal.App.4th 691, 694, 47 Cal. Rptr.2d 53.)
The parties do not dispute that the defendant was arrested for the current offense on December 27, 2000. He began serving his 90-day sentence on the unrelated matter on January 3, 2000. The probation report does not state any reason to believe the defendant would have been in custody during the disputed eight days absent his arrest on the current conviction.
We therefore remand this matter to the trial court for reconsideration of the defendant's custody credit calculation in light of these observations. The trial court shall make factual findings regarding the above disputed custody credits and shall describe its reasons for awarding or denying credits pursuant to sections 2900.5 and 4019. And in the interest of judicial economy, it shall also endeavor to respond to defendants' future requests for attention to such matters. (See People v. Fares, supra, 16 Cal. App.4th at pp. 957-958, 20 Cal.Rptr.2d 314.)

DISPOSITION
The defendant's convictions of auto theft and receiving stolen property are reversed. If the people do not timely elect to retry the defendant on a theory permitting dual conviction, the trial court shall reinstate only the conviction for violation of Vehicle Code section 10851. We also remand this matter to the trial court for consideration of the applicability of sections 2900.5 and 4019 to the time period of December 27, 2000, through January 3, 2001, and order it to produce its analysis of this issue for the record and an amended abstract of judgment if appropriate. In all other respects the judgment is affirmed.
WE CONCUR: PREMO and WUNDERLICH, JJ.
NOTES
[1] People v. Marsden (1970) 2 Cal.3d 118, 123, 84 Cal.Rptr. 156, 465 P.2d 44.
[2] All further statutory references shall be to the Penal Code unless indicated otherwise.
[3] Section 496 reads in relevant part, "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year. ... [¶] A principal in the actual theft of the property may be convicted pursuant to this section. However, no person may be convicted both pursuant to this section and of the theft of the same property."
[4] "It is the intent of the Legislature to provide for the prosecution of principals in the actual theft of the property who continue to possess that property after the statute of limitations has run on the theft of the property."
[5] Our holding is specifically limited to cases in which only the passage of time constitutes the divorcement. We do not address whether the complete divorcement exception would permit dual conviction if a defendant steals, loses possession of, then again receives the same stolen property. (See People v. Jaramillo, supra, 16 Cal.3d at p. 759, fn. 8, 129 Cal.Rptr. 306, 548 P.2d 706.)
[6] The defendant also argues that this defense was relevant to the receipt of stolen property. Because we are reversing his conviction for section 496, we need not consider whether additional error impacted that conviction.
[7] It should be noted that the defendant was represented by different counsel, Ms. Smith, for the preliminary hearing, and thus, he had more than just one meeting with his defense team prior to trial.