[No. A073565. First Dist., Div. Five. Jan. 31, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
DORA JEAN RODRIGUEZ, Defendant and Appellant.

COUNSEL

Dotty E. Le Mieux, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Kenneth C. Young, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JONES, J.—**

### INTRODUCTION

Dora Jean Rodriguez appeals from a judgment of conviction for being in possession of a forged paper. She contends the trial court erred in refusing to grant her worktime credit for time spent at the California Rehabilitation Center (CRC).

BACKGROUND

Rodriguez pleaded no contest to a charge of possessing a forged paper (Pen. Code,[1] § 475) and admitted a prior prison term (§ 667.5, subd. (b)) in exchange for a CRC referral (Welf. & Inst. Code, § 3051). The court imposed a four-year prison term with the provision that if Rodriguez were found ineligible for CRC, the sentence would be reduced to two years (§ 1170, subd. (d)). Rodriguez was committed to CRC on November 29, 1994. In a letter dated April 28, 1995, CRC notified the court that it had reviewed Rodriguez's suitability for the Civil Addict Program and found her "not suitable because of her current medical condition that requires treatment beyond the scope of the Civil Addict Program."[2] Pursuant to a court order, Rodriguez was returned to the custody of the Napa County Department of Corrections on June 4. Criminal proceedings were reinstated on June 23, 1995, and on August 8, Rodriguez was released on her own recognizance with the understanding that any failure to appear would result in a four-year prison term. When, on September 7, she did fail to appear, a bench warrant was issued, and on February 28, 1996, the court resentenced her to four years with 506 days' credit for time served (§ 4019).

DISCUSSION

On appeal, Rodriguez asserts that the trial court's denial of work-time credits for the time she spent at CRC violated her right to equal protection of the laws. She recognizes that worktime credits granted to state prisoners by section 2933[3] are generally not available for time spent at CRC (*People* v. *Abdullah* (1992) 6 Cal.App.4th 1728, 1733-1734 [9 Cal.Rptr.2d 131]), but contends the general rule should not apply in her case because she was excluded from CRC solely for medical reasons beyond her control.

In *People* v. *Eddy* (1995) 32 Cal.App.4th 1098, 1108 [38 Cal.Rptr.2d 563] (*Eddy*), the court observed that "cases which have determined that the Legislature may deny section 2933 one-for-one worktime credit to CRC committees without violating equal protection have all *assumed, without*

---

[1]Unless otherwise noted, all further statutory references are to the Penal Code.

[2]The letter stated that on March 10, 1995, Rodriguez had appeared before the Institution Classification Committee. "After careful consideration of all pertinent case factors," that committee had "acted unanimously to exclude" Rodriguez from the program. Because of a heart condition recorded in a medical report dated January 27, she required medical treatment beyond the scope of the Civil Addict Program. The record contains no further indication of the exact date upon which the determination of unsuitability was made.

[3]Section 2933 provides, "For every six months of full-time performance in a credit qualifying program, as designated by the director, a prisoner shall be awarded worktime credit reductions from his or her term of confinement of six months. A lesser amount of credit based on this ratio shall be awarded for any lesser period of continuous performance."

*deciding*, that CRC committees and state prison inmates are 'similarly situated' for equal protection purposes. . . . Instead, those cases determined that, even if CRC committees and prison inmates are similarly situated, a compelling state interest justifies their disparate treatment vis-à-vis work-time credit." (Citations omitted, italics in original.) The compelling state interest identified by the court in *In re Mabie* (1984) 159 Cal.App.3d 301 [205 Cal.Rptr. 528], was the need to foster effective treatment of narcotics addicts. (*Eddy, supra*, 32 Cal.App.4th at p. 1108.) The distinction between the purposes for which inmates and committees are confined—punishment on the one hand and treatment on the other—justifies the denial of worktime credits for time spent in CRC. (*Ibid.*)

Departing from the equal protection analysis of *Mabie*, the *Eddy* court concluded "that CRC committees are *not* similarly situated to prison inmates for the purpose of receiving conduct credit," because they are subject to less restrictive settings than most prison inmates, and able to avail themselves of treatment programs unavailable to most prison inmates. (*Eddy, supra*, 32 Cal.App.4th at p. 1110, italics added.) Accordingly, the *Eddy* court affirmed the denial of worktime credits to a CRC committee excluded after 504 days for threatening to burn down the housing unit if he was not transferred. (*Id.* at pp. 1101 & fn. 1, 1110.)

By contrast, Rodriguez contends her situation is more akin to that of the prison inmates in *In re Reina* (1985) 171 Cal.App.3d 638 [217 Cal.Rptr. 535] (*Reina*), and *In re Carter* (1988) 199 Cal.App.3d 271 [244 Cal.Rptr. 648] (*Carter*), who were unable to participate in a work program through no fault of their own, than to CRC committees excluded for the usual reason of excessive criminality. In *Reina*, the court held a regulation providing that state prison inmates not be penalized as to work credits when subjected to a nonadverse transfer was not inconsistent with section 2933, and that prisoners no longer able to work because they were transferred from a vocational institution to the segregation unit of a state prison for administrative reasons beyond their control came within the regulation. (*Reina, supra*, 171 Cal.App.3d at pp. 642-644.) In *Carter*, we held a prison inmate was entitled to worktime credits he could have earned during a period of time in which he was assigned a credit qualifying job, but through no fault of his own was unable to start work. The administrative delay (41 days to obtain the prisoner's photograph) brought the case within the regulations providing worktime credit in certain circumstances beyond the inmate's control. (*Carter, supra*, 199 Cal.App.3d at pp. 274-276.)

It is clear that section 2933 permits worktime credits under certain circumstances in which they are not actually earned, including those

illustrated by the *Reina* and *Carter* cases. We conclude that when the distinction between CRC committees and prison inmates disappears because CRC has made a formal determination that a committee is "not suitable" by reason of a medical condition requiring treatment not available at CRC, the two classes of detainees are similarly situated for equal protection purposes.[4] We recognize that the Legislature apparently determined, as was noted by the court in *Mabie*, that the award of section 2933 worktime credits to a CRC committee would not foster effective treatment, by unduly shortening the length of a committee's therapy. (*In re Mabie, supra*, 159 Cal.App.3d at p. 308.) However, where CRC determines it cannot or will not provide treatment due to the committee's previously undiagnosed medical complication not amenable to treatment at a CRC facility, the strong public policy justifying disparate treatment is absent. The committee who has been found unsuitable due to such a medical condition and who is awaiting return to the sentencing court for resumption of criminal proceedings is similarly situated, for equal protection purposes, to a person "sentenced to state prison" within the meaning of section 2933.

Rodriguez was returned to the sentencing court for recall of her sentence pursuant to section 1170, subdivision (d) and the terms of her plea bargain. Once a formal determination was made that Rodriguez was "not suitable" for CRC, she faced all too familiar administrative delays in arranging transport to the sentencing court and in scheduling a sentencing hearing before the proper sentencing judge. The length of Rodriguez's term of imprisonment should not be adversely affected by the vagaries of inter-county prisoner bus scheduling or changing judicial assignments. She should therefore be awarded custody credits from the time CRC formally notified the court of its determination that she was "not suitable" and referred her for further proceedings on the suspended criminal charges. This occurred by letter dated April 28, 1995. Appellant should receive worktime credits under section 2933 from the date of the formal notification that she was "not suitable"— April 28, 1995—to the date of her return to Napa County custody, which is June 4, 1995.

The remaining question is whether Rodriguez should receive one-for-one worktime credits or the one-for-two "quasi-worktime credit" (*Eddy, supra*, 32 Cal.App.4th at p. 1107) afforded to "every prisoner willing to participate in a full-time credit qualifying assignment but who is either not assigned to a full-time assignment or is assigned to a program for less than full time"

---

[4]We express no opinion whether our holding would apply to CRC committees excluded for excessive criminality or other fault-based reasons, since that situation is not before us in this case.

(§ 2933).[5] In *Carter* and *Reina*, the courts gave full one-for-one credits to a prisoner who had been assigned to a credit-qualifying job but was unable to start for want of a photograph (*Carter, supra*, 199 Cal.App.3d at p. 273), and to prisoners who were working and earning one-for-one credits when they were transferred to an institution where no work was available (*Reina, supra*, 171 Cal.App.3d at p. 640). Unlike those prisoners, Rodriguez had not been working or assigned to a qualifying job at the time her credits began to accrue. We believe her situation is more analogous to that of inmates who receive "quasi-worktime credit" (*ante*, fn. 5), particularly those on unclassified status while undergoing reception center processing (Cal. Code Regs., tit. 15, § 3044, subd. (b)(7)).

We reach our conclusion that Rodriguez is entitled to one-for-two quasi-worktime credit mindful of our Supreme Court's decision in *People* v. *Jones* (1995) 11 Cal.4th 118 [44 Cal.Rptr.2d 164, 899 P.2d 1358] (*Jones*). In *Jones*, the court held Welfare and Institutions Code section 3201, subdivision (c) credits for good behavior and participation pursuant to section 2931 are unavailable to convicted felons who receive an involuntary civil commitment to CRC on or after January 1, 1983 (§ 2931, subd. (d)). (*Jones, supra*, at pp. 120-121.) However, the *Jones* court did not reach or address the issue of whether section 2933 credits are available to the committee disqualified from the CRC treatment program due to circumstances beyond the control of, and due to no fault of, the committee. It is notable that each case in which, according to *Jones*, a Court of Appeal has restricted worktime and worktime-related credits to convicted felons serving a determinate sentence (*Jones, supra*, at p. 125), is factually distinguishable from the circumstances presented by Rodriguez.[6] Moreover, our research has disclosed no reported decision involving a committee who presents these facts.

---

[5]The Department of Corrections awards one-for-two credits to, for example, inmates on a waiting list pending job availability or awaiting adverse transfer, inmates assigned to segregated housing, and inmates undergoing reception center processing. (Cal. Code Regs., tit. 15, § 3044, subd. (b)(2), (5) & (7).)

[6]In *People* v. *Madison* (1993) 17 Cal.App.4th 783, 786 [22 Cal.Rptr.2d 157], appellant was excluded due to excessive criminality. In *Eddy*, the court considered the credit rights of a committee who was excluded "because he threatened to burn down the housing unit if he was not transferred." (*Eddy, supra*, 32 Cal.App.4th at p. 1101, fn 1.) Likewise in *People* v. *Abdullah, supra*, 6 Cal.App.4th at page 1733 and *People* v. *Miller* (1991) 233 Cal.App.3d 1551, 1553 [285 Cal.Rptr. 410], both appellants were excluded because of a history of excessive criminality. In *People* v. *Williams* (1991) 232 Cal.App.3d 1643 [284 Cal.Rptr. 241], appellant, who was charged with a new crime after he was paroled from CRC, sought section 2933 worktime credits when criminal proceedings were reinstated in connection with his prior convictions. (232 Cal.App.3d at pp. 1645-1646.) *Jones* itself is silent on the factual circumstances giving rise to the exclusion therein. (*Jones, supra*, 11 Cal.4th at p. 121.)

## Disposition

The matter is remanded to the trial court for recalculation of credits in accordance with the views expressed herein.

Peterson, P. J., and Haning, J., concurred.

A petition for a rehearing was denied February 25, 1997, and respondent's petition for review by the Supreme Court was denied April 23, 1997.