[No. B168243. Second Dist., Div. One. May 21, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH D. MITCHELL, Defendant and Appellant.

Counsel

Cheryl Barnes Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Marc E. Turchin and Lisa J. Brault, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**VOGEL, J.**—For his part of a negotiated plea agreement, Joseph D. Mitchell pled no contest to one count of felony possession of cocaine base and one misdemeanor count of possession of paraphernalia, and admitted he had suffered two strikes and served five prior prison terms. For its part, the trial court struck the admitted strikes and all but two of the prior prison term allegations, sentenced Mitchell to state prison for a term of five years, suspended execution of the sentence, and (on November 25, 2002) committed Mitchell to the California Rehabilitation Center for treatment. Mitchell arrived at CRC on January 8, 2003. On January 29, Mitchell was declared ineligible for CRC because he was on parole at the time of his commitment— but he was not transferred to the Los Angeles County jail for resentencing until May 2. On June 10, Mitchell's suspended sentence was imposed and he was sent to prison. This appeal is from that judgment.

## DISCUSSION

When Mitchell was resentenced on June 10, the prosecutor said, "if the court wants to give him good time/work time from [January 8], I don't have any opposition." The trial court rejected this simple approach, gave Mitchell actual and conduct credits for the period before he was sent to CRC (November 25, 2002, to January 8, 2003), plus actual-day credits for the 112 days from January 8 to May 2—but no conduct or worktime credits for those 112 days.[1] On this appeal, Mitchell claims he is entitled to conduct and worktime credits for the entire period between the original imposition of sentence (November 2002) and his resentencing on June 10, 2003. We agree.

---

[1] We use the term "conduct credits" to apply to the presentence good conduct credits afforded by Penal Code section 4019 (pursuant to which a term of six days is deemed to have been served for every four days spent in actual custody), and the term "worktime credits" to apply to the postsentence credits afforded by Penal Code section 2933 (which generally provides that, for every six months spent in a qualifying program, the prisoner receives credit for an additional six months). Undesignated section references are to the Penal Code.

## A.

Mitchell contends he is entitled to section 4019 credits for the 93 days from January 29 (the date of his CRC exclusion) to May 2 (the day of his transfer to county jail). The Attorney General concedes this much, and (except as noted below) we accept that concession.

## B.

Mitchell contends he is entitled to section 2933 credits for the 93-day period from January 29 to May 2, which he says is "sufficient to place him in the same position as a person who was not held for 93 days at CRC after formal exclusion." We agree.

### 1.

In *People v. Rodriguez* (1997) 52 Cal.App.4th 560 [60 Cal.Rptr.2d 664], the defendant was received at CRC but rejected as "not suitable" based on her medical condition and the program's inability to treat her. (*Id.* at p. 563.) On appeal, she challenged the trial court's refusal to give her "worktime credits" for the time she spent at CRC, contending her exclusion was through no fault of her own. Division Five of the First Appellate District agreed that she should receive section 2933 credits from the date the trial court was notified she was "not suitable," explaining the difference between the general rule that denies credits to CRC inmates on the theory that they are receiving treatment, and the rule that affords "quasi-worktime" credits to inmates who, through no fault of their own (such as through administrative delays and transfers), are unable to participate in work programs. (*Rodriguez,* at pp. 563–565; *People v. Lizarraga* (2003) 110 Cal.App.4th 689, 693 [1 Cal.Rptr.3d 865].)

The *Rodriguez* court concluded "that when the distinction between CRC committees and prison inmates disappears because CRC has made a formal determination that a committee is 'not suitable' by reason of a medical condition requiring treatment not available at CRC, the two classes of detainees are similarly situated for equal protection purposes. . . . The committee who has been found unsuitable due to such a medical condition and who is awaiting return to the sentencing court for resumption of criminal proceedings is similarly situated, for equal protection purposes, to a person 'sentenced to state prison' within the meaning of section 2933." (*People v. Rodriguez, supra,* 52 Cal.App.4th at p. 565, fn. omitted.)

### 2.

In *People v. Nubla* (1999) 74 Cal.App.4th 719 [88 Cal.Rptr.2d 265], the defendant claimed a right to "conduct and worktime credits" for the period

beginning with his exclusion from CRC, notwithstanding that he remained at the CRC facility for a substantial period of time after he was found "not suitable"—and notwithstanding that his exclusion was due to his own conduct. Division One of the First Appellate District held in *Nubla* that the reasoning of the *Rodriguez* court "applies equally to exclusions based on 'fault.' In addition, defendants excluded for fault-based reasons after admission to CRC are in the same general class as those found ineligible for CRC commitment in the first place. It follows that they should be afforded the same treatment as persons found to be ineligible for CRC, and are entitled to worktime credits for any time in custody after exclusion to the same degree as they would be entitled to worktime credits had there been no CRC commitment." (*People v. Nubla, supra,* 74 Cal.App.4th at p. 732; and see *People v. Guzman* (1995) 40 Cal.App.4th 691 [47 Cal.Rptr.2d 53].)

### 3.

In our case, there was no actual finding that Mitchell was "not suitable" for treatment at CRC within the meaning of Welfare and Institutions Code section 3053, which *permits but does not mandate* exclusion from CRC when a person is unfit "because of excessive criminality or for other relevant reason." (Welf. & Inst. Code, § 3053, subd. (a).) Rather, it was and remains undisputed that (in light of CRC's no-parolees-accepted policy) Mitchell was *not eligible* for a CRC commitment *at the time he arrived at CRC.* (Cf. Welf. & Inst. Code, § 3052, subd. (a).)[2] In our view, ineligibility that is neither the result of the defendant's postsentencing conduct nor within his control voids the commitment and triggers the defendant's right to receive the same credits he would have received had he been sentenced to prison in the first instance. (*People v. Guzman, supra,* 40 Cal.App.4th at pp. 694–695; *People v. Rodriguez, supra,* 52 Cal.App.4th at p. 565; *People v. Nubla, supra,* 74 Cal.App.4th at p. 732.) Equal protection permits no other result where, as here, there is nothing in the record to suggest Mitchell received treatment or any other benefit during any of the time he was confined at CRC. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 30, fn. 6, 36 [108 Cal.Rptr.2d 625, 25 P.3d 1103].)

Accordingly, Mitchell is entitled to section 2933 credits from January 29 (the date of his formal exclusion from CRC) to June 10 (the day sentence was imposed). (*People v. Guzman, supra,* 40 Cal.App.4th at pp. 694–695;

---

[2] It is undisputed that at the time Mitchell arrived at CRC (January 8, 2003), CRC was operating under a mandate to reduce the number of available beds and, to that end, had "instituted a rule change which excluded anybody from the program who was on parole." In light of this uncontradicted on-the-record statement, we disregard a letter sent to the trial court by the Department of Corrections in which it is suggested that a decision about Mitchell's suitability was based on his personal shortcomings rather than the state's budgetary problems.

*People v. Rodriguez, supra,* 52 Cal.App.4th at p. 565; *People v. Nubla, supra,* 74 Cal.App.4th at p. 732; see also *In re Carter* (1988) 199 Cal.App.3d 271 [244 Cal.Rptr. 648]; *In re Reina* (1985) 171 Cal.App.3d 638 [217 Cal.Rptr. 535].)

■ But Mitchell cannot double-dip. As noted above, the trial court gave Mitchell section 4019 credits for May 2 to June 10, and the Attorney General conceded that Mitchell is entitled to section 4019 credits for January 29 to May 2. Since the credit afforded by section 2933 is greater than the credit afforded by section 4019, and since Mitchell is entitled to the credit most favorable to him but not both, it follows that he is entitled to the section 2933 credits for these days, but not the section 4019 credits. (*People v. Donan* (2004) 117 Cal.App.4th 784 [11 Cal.Rptr.3d 904].)

## C.

Finally, Mitchell contends he is entitled to section 4019 credits for the 21 days from January 8 to January 28 (the time he spent at CRC before the formal determination to exclude him). This is so, he says, because his parole status meant he was not eligible for a CRC commitment, and thus spent the time "in circumstances of penal" confinement, not in a treatment setting. The Attorney General disagrees, assuming without evidence or authority that Mitchell received some unstated benefit during the 21 days he spent at CRC. We see no basis in law or equity for that assumption, and view it more likely that Mitchell spent those 21 days somewhere in the midst of a bureaucratic maze.

For this reason, and because Mitchell was in actuality excluded on January 8, the day he arrived at CRC (making a formal eligibility finding superfluous), we conclude that Mitchell is entitled to section 2933 credits for these days, not the section 4019 credits he asks for in his brief. (*People v. Rodriguez, supra,* 52 Cal.App.4th at p. 565; *People v. Nubla, supra,* 74 Cal.App.4th at pp. 731–732.)

## DISPOSITION

The cause is remanded to the trial court with directions to recalculate Mitchell's actual-day credits, section 4019 credits (November 25, 2002, to January 7, 2003), and section 2933 credits (January 8 to June 10, 2003), to issue a corrected abstract of judgment, and to forward it to the Department of Corrections; in all other respects, the judgment is affirmed.

Spencer, P. J., concurred.

**ORTEGA, J.,** Concurring and Dissenting.—I agree with the majority that Mitchell should receive Penal Code section 2933 prison credits from his January 29, 2003, formal exclusion from the California Rehabilitation Center (CRC) until his June 10, 2003, sentencing. (All further undesignated section references are to the Penal Code.) Thus, I concur with the holdings in sections A and B of the majority opinion. However, Mitchell should receive neither section 4019 nor section 2933 credits from his January 8, 2003, CRC arrival until his January 29, 2003, formal CRC exclusion. Therefore, I dissent from section C of the majority opinion, as well as the first paragraph of section B.3. I set out some additional facts that help explain my conclusions.

On the November 25, 2002, trial date, the court called the new case and two of Mitchell's prior cases (presumably those for which he still was on parole). Mitchell's lawyer then said: "[W]hen we had discussed disposition of this matter, the court indicated that [it] would accept a plea with a five-year commitment to CRC [Welf. & Inst. Code, § 3000 et seq.], and [Mitchell] does wish to do that." After valid advisements and waivers, Mitchell pled no contest to counts 1 and 2, and admitted all the alleged prior convictions.

The court struck both strikes and three of the prior prison term convictions because the prior and current crimes were less serious, did not involve violence or serious public danger, the strikes were part of one case nine years earlier, and, as reflected in four of the five prior convictions, Mitchell had a drug problem. The court considered a pre-plea probation report noting Mitchell's drug problem which recommended a state prison sentence rather than probation. The report did not mention a CRC commitment as a dispositional alternative.

The court concluded Mitchell needed a CRC commitment, the most appropriate disposition. The trial court imposed a three-year upper term on count 1 and two consecutive one-year terms for the remaining prior convictions, then suspended execution of that sentence. This colloquy followed: "[The Court:] However, pursuant to section 3051 of the Welfare and Institutions Code, [Mitchell] has been advised of his rights regarding the hearing pursuant to [section] 3051 of the Welfare and Institutions Code. [¶] At this time Mr. Mitchell waives his rights, [Mitchell's counsel]?

"[Mitchell's counsel]: Yes.

"The Court: The maximum period of commitment . . . in [CRC] would be five years plus the parole period. [¶] You understand that, sir?

"[Mitchell]: Yes, sir.

"The Court: Counsel, you join in the waivers?

"[Mitchell's counsel]: Yes.

"The Court: Court accepts the plea. [¶] Court does find that [Mitchell] is a narcotics addict by reason of repeated use of narcotics. [¶] [Mitchell] is committed to the custody of the Director of Corrections for confinement at [CRC] for a period not to exceed five years." Mitchell received his correct actual and conduct credits.

These facts disclose that, on November 25, 2002, the parties and trial court all knew the following facts: (1) Mitchell was on parole when he committed the new crimes, a factor (prior criminality) CRC could consider in determining his CRC eligibility; (2) one of Mitchell's prior convictions, constituting a strike, was for robbery, a non-drug-related serious and violent felony, which CRC likewise could consider in determining his CRC eligibility; (3) Mitchell was statutorily eligible for CRC, but (4) Mitchell was not automatically entitled to a CRC commitment; rather, CRC retained discretion to exclude him.

On May 15, 2003, the court filed a letter dated May 2, 2003, from CRC's warden. The letter began: "The case of . . . Mitchell has been *reviewed for suitability* for the Civil Addict Program. It is our *evaluation* that . . . Mitchell *is not suitable* because of his dual case status under both a Felon Commitment and a Civil Addict Commitment." (Italics added.) The letter stated CRC received Mitchell on January 8, 2003. "On January 29, 2003, . . . Mitchell appeared before the Unit Classification Committee. *After careful consideration of all pertinent case factors*, the Unit Classification Committee acted unanimously to exclude . . . Mitchell from the Civil Addict Program because of his dual case status under both a Felon Commitment and a Civil Addict Commitment. [¶] *The decision is in compliance with Section 3053 of the Welfare and Institutions Code and I indeed view . . . Mitchell as unsuitable for the program* because a person while serving a parole revocation term, may not be committed to the Civil Addict Program." (Italics added.) The letter noted that on January 29, 2003, CRC advised Mitchell of his administrative appeal rights, but Mitchell never pursued such an appeal. The letter stated, "Mitchell will be retained at the [CRC] pending Court action."

Mitchell and his lawyer appeared in court on May 30, 2003. The court granted Mitchell's continuance motion to June 10, 2003. At the June 10 hearing, Mitchell's lawyer began, stating: ". . . I initially spoke with [Mitchell's] parole officer who didn't understand what was going on here either and then I spoke with a staff at C.R.C. [¶] And it appears effective January this year the C.R.C. was mandated to a reduced number of beds they had available and they instituted a rule change which excluded anybody from the program who was on parole. [¶] Before that they did accept people, such

as Mr. Mitchell. So that's apparently the reason he got excluded." Mitchell never asked to withdraw his plea, but asked the court to reduce his indicated state prison sentence to three years. The court refused that request and lifted the earlier suspension of the five-year sentence.

The parties and the court then discussed Mitchell's credits, agreeing he should receive section 4019 presentence credits for two periods: from his initial November 25, 2002, disposition to his January 8, 2003, arrival at CRC, and from the May 2, 2003, date of the CRC letter until the June 10, 2003, sentencing. The court awarded section 4019 credits for those two periods. Mitchell argued he also should receive section 4019 credits from January 8 through May 2, 2003, arguing he effectively never was in the CRC program. The prosecutor stated she did not oppose granting such credit. However, the trial court noted, and the parties agreed, that if it awarded excessive credits, the Department of Corrections would refer the case back for credit reduction. When the court stated that the law excluded credits at least for the time between CRC receipt and formal exclusion, Mitchell then argued he should at least receive credits from his January 29, 2003, formal exclusion. Eventually, the trial court denied any credits for the January 8 through May 2, 2003, period.

As noted, I agree that, while CRC inmates receive no credits, defendants originally committed to and received by CRC who later are excluded, regardless of the reason, should receive section 2933 credits from their formal exclusion date until their sentencing. (*People v. Lizarraga* (2003) 110 Cal.App.4th 689, 693 [1 Cal.Rptr.3d 865]; *People v. Nubla* (1999) 74 Cal.App.4th 719, 731–732 [88 Cal.Rptr.2d 265]; *People v. Rodriguez* (1997) 52 Cal.App.4th 560, 565–566 [60 Cal.Rptr.2d 664].) Thus, I agree with the majority that Mitchell should receive only section 2933 credits from his January 29, 2003, CRC exclusion until his June 10, 2003, sentencing.

However, I dissent from the majority's expansion of the credits to the period from Mitchell's January 8, 2003, CRC arrival until his January 29, 2003, exclusion. The majority reach their conclusion by stating, "it was and remains undisputed that (in light of CRC's no-parolees-accepted policy) Mitchell was *not eligible* for a CRC commitment *at the time he arrived at CRC.* (Cf. Welf. & Inst. Code, § 3052, subd. (a).)" (Maj. opn., *ante*, at p. 1149.) In a footnote, the majority support this conclusion by accepting as "undisputed" Mitchell's lawyer's June 10, 2003, statement that CRC had adopted a blanket policy of excluding all otherwise eligible committees who were on parole when they committed their qualifying crimes, and "disregarding" CRC's formal letter expressly stating that Mitchell was excluded after an individualized evaluation. (*Id.* at fn. 2.)

However, Mitchell never was statutorily ineligible for CRC under any of the subdivisions of Welfare and Institutions Code section 3052. Those provisions relate to defendants convicted of sex crimes or serious or violent felonies in their most recent crimes, convictions of which led to their CRC referral, none of which apply to Mitchell. Had Mitchell been statutorily ineligible for CRC, the trial court would have erred by initially referring him there, despite Mitchell's clear desire for such a commitment. However, as noted, the trial court's decision to commit Mitchell to CRC was valid. If the majority think the trial court erred in initially referring Mitchell to CRC, they should say so. Mitchell does not so contend, correctly in my view, because he was eligible.

CRC did not exclude Mitchell because he was statutorily ineligible under Welfare and Institutions Code section 3052; instead, CRC excluded Mitchell under its discretionary power to exclude certain inmates under Welfare and Institutions Code section 3053, subdivision (a), because of excessive criminality. The May 2, 2003, CRC letter expressly states Mitchell's exclusion was based on an individualized evaluation, consistent with CRC's discretion to exclude particular inmates based on their overall record and other appropriate factors, demonstrating excessive criminality, under Welfare and Institutions Code section 3053. Mitchell's lawyer's uncorroborated statement at the June 10 sentencing that CRC had adopted a blanket exclusion policy cannot trump the expressed reasons in the May 2 letter. Even if Mitchell's lawyer's statement is accepted, had Mitchell arrived at CRC before January, he possibly would have been admitted. The trial court's November 25, 2002, CRC commitment was valid when entered.

The majority's cavalier dismissal of CRC's formal letter explaining that Mitchell was discretionarily excluded in favor of a contrary uncorroborated unsworn hearsay statement by his lawyer cannot support changing a discretionary into a statutorily mandated exclusion. The majority distort the record to incorrectly conclude that Mitchell was excluded from CRC before he ever arrived, and thus should receive credit from his arrival rather than his exclusion date. This incorrect conclusion also compels the majority, again incorrectly, to suggest without saying so that the trial court somehow erred in not divining on November 25, 2002, that Mitchell somehow was ineligible for CRC and never should have been referred there. The majority apparently do so to justify their unspoken rejection of *Lizarraga, Nubla*, and *Rodriguez*'s rationale for denying credits to those excluded from CRC until their formal exclusion. Those three cases, correctly in my view, conclude that CRC time is different from prison time, and that those being evaluated for placement receive some CRC services until their formal exclusion. Mitchell spent from January 8 through 29 at CRC rather than in prison. Mitchell wanted to be at CRC, and never complained about being housed there for nearly four months. In my view, the majority opinion does not meet the standards for publication.

The prosecutor's agreement on June 10 to award Mitchell credits for the entire time he was at CRC was incorrect, not a legally proper result the trial court somehow erred in not "simpl[y]" adopting as the majority suggest. As the trial court noted, the Department of Corrections would return Mitchell for credit reduction if the trial court awarded excessive credits not authorized by law. Moreover, the Attorney General properly conceded Mitchell should receive credits from January 29. The Attorney General's opposition to awarding credits for January 8–29 was legally correct and does not justify stretching the facts and law to award Mitchell a windfall of unjustified credits.

The only error in this record was the trial court's June 10 credits calculation. As we should, we have corrected that error on appeal. However, neither the trial court nor CRC erred or acted improperly in initially referring or eventually discretionarily excluding Mitchell from CRC. We should not suggest to the contrary, or stretch the facts or law, to award Mitchell unwarranted credits. Likewise, we should not do so to chastise the trial court, CRC, or the Attorney General for nonexistent mistakes, discretion properly exercised, and arguments correctly advanced.

For these reasons, I dissent from the award of credits for January 8–29, 2003.